UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.  Case No. 6:18-cr-124-Orl-37GJK

NADINE BROMFIELD ALEXANDER
_____

### ORDER

Before the Court is Defendant Nadine Bromfield Alexander's Motion for Compassionate Release and Request for an Indicative Ruling. (Doc. 409 ("**Motion**").) The Government opposes. (Doc. 411.) On review, the Motion is denied.

### I.   BACKGROUND

A federal grand jury indicted Ms. Alexander and co-Defendants for conspiracy to commit wire fraud and money laundering, aggravated identity theft, and other related charges stemming from a fraudulent sweepstakes scheme in Jamaica and the Middle District of Florida. (Doc. 1.) A jury found Ms. Alexander guilty of the conspiracy counts and three counts of aggravated identity theft. (*See* Doc. 183.) The Court sentenced her to 84 months in prison—60 months plus 24 consecutive months for the aggravated identity theft counts—followed by 3 years of supervised release. (Docs. 322, 325.) The Court varied downward from the guidelines range based on: (1) the nature and circumstances of the offense; (2) Ms. Alexander's history and characteristics; (3) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (4) to afford adequate deterrence to criminal conduct; (5) to avoid unwarranted

sentencing disparities among defendants; and (6) to provide restitution to any victims. (*See* Doc. 326, p. 3.) Ms. Alexander appealed the judgment, which remains pending. (Doc. 336.)

Ms. Alexander is incarcerated at Federal Correctional Institution Coleman Low ("**FCI Coleman Low**"). (*See* Doc. 409, p. 2.) She self-surrendered on June 5, 2019, and her expected release date according to the Bureau of Prisons' ("**BOP**") website is May 21, 2025.[1] (*See id.*; *see also* Doc. 411, p. 3; Doc. 339.) She is forty-one years old with chronic asthma, requiring the use of an inhaler, and has a history of anemia, abnormal vaginal bleeding, and an acute respiratory illness. (Doc. 409, pp. 1, 5–7; Doc. 409-1, pp. 3–8.) On May 18, 2020, Ms. Alexander submitted a compassionate release request to the Warden of FCI Coleman Low, which he denied on June 18, 2020. (Doc. 409, p. 3; Doc. 409-1, p. 2.)

Ms. Alexander moves for compassionate release and a reduction of her sentence to time served under 18 U.S.C. § 3582(c)(1)(A) because her chronic asthma and other health issues "put[ ] her at a high risk for a severe outcome should she contract COVID-19." (Doc. 409.) Because of her pending appeal, she seeks an indicative ruling. (*Id.* at 3–4.) With the Government's response (Doc. 411), the matter is ripe.

## II.   LEGAL STANDARDS

### A.   Compassionate Release

The statute governing compassionate release, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, prescribes the limited circumstances in which a court may

---

[1] The BOP's online inmate locator, which includes the location of inmates and their projected release date, is found at https://www.bop.gov/inmateloc/.

modify a term of imprisonment. A court may grant a request for compassionate release if it finds: (1) the defendant satisfies § 3582(c)(1)(A)'s exhaustion requirement; (2) the relevant § 3553(a) factors support release; (3) extraordinary and compelling reasons warrant a sentence reduction; and (4) the defendant is not a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13. The defendant must show relief is warranted. *See United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (citing *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013)).

### B.    Indicative Rulings

If a party moves for relief a court lacks authority to grant due to a pending appeal, "the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a). If the court states it would grant the motion or it raises a substantial issue, the moving party must promptly notify the court of appeals, which "may remand for further proceedings." Fed. R. App. P. 12.1.

### III.    DISCUSSION

Ms. Alexander seeks compassionate release based on the high risk of a severe outcome if she contracts COVID-19 given her chronic asthma and other medical conditions. (*See* Doc. 409.) But Ms. Alexander has failed to show this constitutes an "extraordinary and compelling reason" required for compassionate relief under § 3582(c)(1)(A) and U.S.S.G. § 1B1.13.[2]

---

[2] The parties agree that because more than thirty days have lapsed since the Warden received Ms. Alexander's compassionate release request, the Court can address

The Sentencing Commission has identified "extraordinary and compelling reasons" that may justify compassionate release based on a medical condition. *See* U.S.S.G. § 1B1.13 cmt. n.1(A). These include suffering from a terminal illness or a serious physical or medical condition from which the defendant is not expected to recover and that substantially diminishes the defendant's ability to provide self-care in prison. *See id.*; *see also Klatch v. United States*, No. 8:17-cr-135-T-27JSS, 2020 WL 1694299, at *2 (M.D. Fla. Apr. 7, 2020). Although "general" concerns about COVID-19 don't warrant relief, it may be warranted for those more vulnerable due to underlying medical conditions. *See, e.g., United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *United States v. Echevarria*, No. 3:17-cr-44 (MPS), 2020 WL 2113604, at *2 (D. Conn. May 4, 2020) (citing cases). But compassionate release based on a medical condition "is an extraordinary and rare event." *See United States v. Rodriguez-Orejuela*, No. 03-CR-20774-MORENO, 2020 WL 2050434, at *5 (S.D. Fla. Apr. 28, 2020) (citation omitted).

Ms. Alexander's compassionate release request mainly hinges on her chronic asthma (Doc. 409, pp. 6–11), but she hasn't shown her medical condition, coupled with the risks of COVID-19, warrants release. Although those with moderate to severe asthma may be at an increased risk of severe illness from COVID-19, Ms. Alexander doesn't describe the severity of her asthma or how it impacts her.[3] (*See* Doc. 409, pp. 6–11; Doc.

---

the merits of the Motion. (*See* Doc. 409, p. 3; Doc. 411, p. 12); *see also* 18 U.S.C. § 3582(c)(1)(A).

[3] *See* Centers for Disease Control and Prevention, *People with Certain Medical Conditions: Asthma (Moderate to Severe)*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated July 17, 2020).

409-1, pp. 5–7.) Nothing in her medical records or Motion demonstrates she suffers daily symptoms or that her asthma interferes with her daily activities, which could show her asthma is "moderate to severe." (*See* Doc. 409; Doc. 409-1, pp. 3–8); *see also United States v. Miles*, No. 2:17-cr-00127-KJM, 2020 WL 3256923, at *3 (E.D. Cal. June 16, 2020) (relying on the BOP's Clinical Practice Guidelines for assessing the severity of asthma). Beyond this, she doesn't allege and her medical records don't reveal her asthma isn't controlled by her inhaler. (*See* Doc. 409-1, pp. 3–8.) During her June 2020 medical visit, she denied shortness of breath, chest pain, and other symptoms—she reported using her inhaler more often but admitted she wasn't following her treatment directives. (*Id.* at 3–5.) So Ms. Alexander hasn't demonstrated her asthma warrants compassionate release. *See, e.g., Miles*, 2020 WL 3256923, at *3–4 (defendant didn't show his chronic asthma is "moderate to severe" or allege how his condition responds to treatment); *see also United States v. Wheeler*, No. 19-cr-00085 (ESH), 2020 WL 2801289, at *3–4 (D.D.C. May 29, 2020); *United States v. Davis*, No. 18-cr-10013-JES-JEH, 2020 WL 2488574, at *4 (C.D. Ill. May 14, 2020).

Ms. Alexander's reliance on her other health conditions is likewise unavailing. She says she has an acute respiratory illness, but her medical records reveal she was treated for a respiratory infection in January 2020 with four days of medication, and by June 2020 she didn't complain of any symptoms. (Doc. 409, p. 5; Doc. 409-1, pp. 3–6.) And although she references suffering from anemia and abnormal vaginal bleeding, Ms. Alexander doesn't explain how these conditions relate to her compassionate release request or impact her ability to provide self-care in prison, nor does she say she is receiving inadequate treatment for them. (*See* Doc. 409, pp. 5, 7; *see also* Doc. 409-1, pp. 3–11.) So she

hasn't shown her medical condition warrants compassionate release. *See, e.g.*, *Miles*, 2020 WL 3256923, at *3–4; *Wheeler*, 2020 WL 2801289, at *3–4.

Ms. Alexander is correct that some courts have granted compassionate release requests to incarcerated individuals with chronic asthma who require an inhaler. (*See* Doc. 409, pp. 8–10 (citing cases).) But those cases differ. For example, some defendants were housed at facilities with an outbreak, hadn't received inhalers or other required asthma treatments, and demonstrated their asthma was moderate to severe or they couldn't provide self-care. *See United States v. Lee*, No. 19-cr-00419-SI-1, 2020 WL 2512415, at *1–2 (N.D. Cal. May 15, 2020); *United States v. Gorai*, No. 2:18-CR-220 JCM (CWH), 2020 WL 1975372, at *3 (D. Nev. Apr. 24, 2020); *United States v. Tran*, No. CR 08-00197-DOC, 2020 WL 1820520, at *1 (C.D. Cal. Apr. 10, 2020). In another case, the defendant's facility had a record of problems adequately treating COVID-19. *See United States v. Wen*, No. 6:17-CR-06173 EAW, 2020 WL 1845104, at *7 (W.D.N.Y. Apr. 13, 2020). And in many, the defendant's prison sentence was almost over—with only months or just days left. *See, e.g.*, *Wen*, 2020 WL 1845104, at *1; *Lee*, 2020 WL 2512415, at *1; *United States v. Gentille*, No. 19 Cr. 590 (KPF), 2020 WL 1814158, at *1 (S.D.N.Y. Apr. 9, 2020); *United States v. Hernandez*, No. 18 Cr. 834-04 (PAE), 2020 WL 1684062, at *1 (S.D.N.Y. Apr. 2, 2020). Given Ms. Alexander hasn't alleged or demonstrated any issues treating her asthma (or COVID-19) at FCI Coleman Low and her expected release date isn't until 2025 (*see* Doc. 409), those cases don't compel the same result here.[4]

---

[4] The same is true for the other cases she cited with defendants suffering from asthma and other respiratory issues as Ms. Alexander's medical records don't establish

-6-

Even if Ms. Alexander's medical condition constituted exceptional and compelling circumstances under U.S.S.G. § 1B1.13, the factors under 18 U.S.C. § 3553(a) weigh against Ms. Alexander's release. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. She was convicted of conspiracy to commit wire fraud and money laundering and three counts of aggravated identity theft. (*See* Docs. 183, 325.) The guidelines range for sentencing was 87–108 months plus two consecutive years for aggravated identity theft, and after careful consideration of the § 3553(a) factors, the Court varied below that in imposing her 60-month sentence plus the two consecutive years (totaling 84 months). (*See* Docs. 325, 326.) To reduce her sentence below 84 months to time served—especially after she has served only one year—would fail to reflect the seriousness of the offense, promote respect for the law, provide for just punishment, or afford adequate deterrence. *See* 18 U.S.C. § 3553(a). So compassionate release isn't warranted. *See, e.g.*, *Wheeler*, 2020 WL 2801289, at *1, *4 (noting a sentence reduction wouldn't align with § 3553(a) factors partly because the defendant had served only 25% of his 34-month sentence); *see also United States v. Korn*, No. 15-CR-81S, 2020 WL 1808213, at *8 (W.D.N.Y. Apr. 9, 2020).

The Court is mindful of the angst of incarcerated individuals during the COVID-19 pandemic, especially those with underlying medical conditions, given the significant health risks to those confined in correctional facilities. Ms. Alexander represents FCI Coleman Low "has not (yet) been plagued with Covid-19 cases" (Doc. 409, p. 10), but the Court is troubled by the conflicting BOP numbers of COVID-19 diagnoses reported there,

---

she now suffers from other respiratory ailments. (*See* Doc. 409, pp. 9–10 & n.7 (citing cases); *see also* Doc. 409-1.)

though it's unclear what part of the facility is affected. *See* Fed. Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited July 28, 2020) (171 positive incarcerated individuals and 18 positive staff members). The Court also acknowledges the BOP's extensive and aggressive efforts to mitigate the spread of COVID-19 and to protect the health of incarcerated individuals. (*See* Doc. 411, pp. 4–10).[5] So absent evidence Ms. Alexander's asthma is more severe or not adequately treated—or that FCI Coleman Low cannot treat individuals for COVID-19—the Court will not assume the BOP or the administration at FCI Coleman Low cannot manage a COVID-19 outbreak or continue to effectively treat Ms. Alexander as necessary. *See, e.g.*, *Wheeler*, 2020 WL 2801289, at *3–4; *see also United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020).

## IV.   CONCLUSION

It is **ORDERED AND ADJUDGED** that Defendant Nadine Bromfield Alexander's Motion for Compassionate Release and Indicative Ruling (Doc. 409) is **DENIED.**

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 29, 2020.



ROY B. DALTON JR.
United States District Judge

---

[5] *See also* Fed. Bureau of Prisons, *COVID-19 Action Plan: Phase Five* (Mar. 31, 2020), https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp.

Copies to:
Counsel of Record